**NORTH PACIFICA, LLC, Plaintiff,**

v.

**CITY OF PACIFICA, et al., Defendants.**

**No. C–01–4823 EMC.**

United States District Court, N.D. California.

Sept. 16, 2004.

Jaquelynn C. Pope, Mark D. Warshaw, Warshaw & Pope, Hermosa Beach, CA, for Plaintiff.

Kevin Drake Siegel, Benjamin Louis Stock, Megan Holt Matthew, Michelle Marchetta Kenyon, Natalie Elsa West, McDonough Holland & Allen PC, Oakland, CA, Cecilia Quick, Pacifica, CA, Mark L. Armstrong, Patrick Joseph McMahon, Gagen McCoy McMahon & Armstrong, Danville, CA, for Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISQUALIFY (Docket No. 333); AND GRANTING PLAINTIFF'S MOTION TO FILE FROMM DECLARATION UNDER SEAL AND *IN CAMERA* (Docket No. 353)**

CHEN, United States Magistrate Judge.

Plaintiff North Pacifica LLC ("NP") has filed a motion to disqualify Defendant the City of Pacifica's experts, Sanford Skaggs and Daniel Curtin, as well as current counsel for the City (*i.e.*, the McDonough firm and the Gagen firm). The Court held a hearing on NP's motion on September 8, 2004, at the conclusion of which the Court granted the motion to disqualify Mr. Skaggs and Mr. Curtin but denied the motion to disqualify the City's current counsel. This order memorializes the Court's ruling at the hearing and also summarizes the basis of the Court's ruling, as discussed in further detail at the September 8 hearing.

## I. *FACTUAL & PROCEDURAL BACKGROUND*

At issue in this case is NP's development permit application for a property known as the Bowl, which is located in the City. As established at the liability phase of the trial, the City violated NP's right to equal protection by imposing a condition on the Bowl project—known as Condition 13(b)—that was not imposed on similarly situated development projects. Under Condition 13(b), individual owners of condominium units could be held jointly and severally liable for condominium common areas and the like.

The development rights to the Bowl property were originally held by Syndicor Real Estate Group ("Syndicor"), a California corporation owned by Keith Fromm. *See* Kalmbach Decl. ¶ 3. Robert Kalmbach was an officer of Syndicor. *See* Kalmbach Decl. ¶ 3. In addition, Mr. Fromm and Mr. Kalmbach "were the only managing principals of Syndicor." Kalmbach Decl. ¶ 3. It is not clear when or how Syndicor's interest was transferred to NP but apparently at some point the interest was transferred. Mr. Fromm and Mr. Kalmbach are members of NP.

In May 1997, Mr. Kalmbach consulted with Mr. Skaggs of the Bingham McCutchen firm about plans to develop the Bowl property. *See* Kalmbach Decl. ¶ 6. According to Mr. Skaggs, this was a one-hour consultation, and the notes of his meeting "consist of one page and do not appear to contain anything confidential." Skaggs Decl. ¶ 6. Mr. Skaggs concluded that an attorney-client relationship had been established during the meeting, the client being Syndicor. *See* Skaggs Decl. ¶ 6. After the consultation, Mr. Skaggs sent Mr. Kalmbach an engagement letter which stated that the engagement was limited to the one-hour consultation that had already occurred. *See* Skaggs Decl. ¶ 6. The letter also stated: " 'We both understand that our representation is of the Syndicon [sic] Real Estate Group, Inc., alone and our employment does not include representation of any individual officer [such as Mr. Kalmbach], director, shareholder, or employee of Syndicon [sic] Real Estate Group.' " Skaggs Decl. ¶ 6. Mr. Kalmbach did not sign and return the engagement letter to Mr. Skaggs but did pay the bill for the consultation. *See* Skaggs Decl. ¶ 6.

According to Mr. Skaggs, he was not contacted by Mr. Kalmbach or Syndicor to perform any additional work. *See* Skaggs Decl. ¶ 7. Therefore, on July 9, 1999, Mr. Skaggs wrote Mr. Kalmbach, "reciting that our initial engagement was limited to the one-hour consultation, confirming that we had provided no additional legal services or advice, and informing him that I was closing the file as there had been no activity since our initial conference." Skaggs Decl. ¶ 7. Although Mr. Skaggs invited Mr. Kalmbach to call if Mr. Skaggs could be of service in the future, Mr. Kalmbach (and Syndicor) did not respond. *See* Skaggs Decl. ¶ 7.

According to Mr. Kalmbach, he had a subsequent consultation with Mr. Skaggs on October 14, 1999, after NP submitted its development permit application for the property to the City. *See* Kalmbach Decl. ¶ 6; *see also* Fromm Reply Decl., Ex. A. (NP applied to the City for development permits on or about July 30, 1999. *See* Kalmbach Decl. ¶ 4.) The topics covered during this consultation "included all aspects of North Pacifica's proposed development project for the Bowl and the Fish and the development permits that North Pacifica was seeking for the Bowl, including, but not limited to, the requirements for CEQA, a Vesting Tentative Map, Site Development Permit and Coastal Development Permit." Kalmbach Decl. ¶ 6; *see also* Fromm Reply Decl., Ex. A. In his declaration, Mr. Skaggs states that he "vaguely recall[s] meeting again with Mr. Kalmbach, but [has] no recollection of the date or the subject matter of the meeting or anything that was said." Skaggs Decl. ¶ 8. Mr. Skaggs did not find any notes or a bill for this second meeting and he did not reopen the Syndicor file or a open a new one. *See* Skaggs Decl. ¶ 8.

Finally, at some unidentified point, Mr. Kalmbach participated in a telephone conference with another attorney from Bingham McCutchen (B.J.Schussman) and NP's agent for the development permit application, Trumark.[1] *See* Kalmbach Decl. ¶ 7.

Moreover, from February to July 2000, NP's agent Trumark paid Bingham McCutchen for a matter named "Fishnbowl project." Kalmbach Decl. ¶ 7. Invoices from Bingham McCutchen to Trumark "reveal that the McCutchen firm, on [NP's] behalf, contacted and communicated with the City." Kalmbach Decl. ¶ 7. The invoices also reflect that Bingham

---

1. On its development permit application, NP listed Trumark as its agent, and Trumark remained NP's agent through December 2000. *See* Kalmbach Decl. ¶ 4.

McCutchen charged Trumark in excess of $12,000 for the services provided. *See* Kalmbach Decl. ¶ 7.

In his declaration, Mr. Skaggs states that neither he nor Mr. Curtin was involved in the representation of Trumark. *See* Skaggs Decl. ¶ 9. Also, the Trumark file maintained by Bingham McCutchen "does not contain any reference to Syndicon, Syndicor or Mr. Kalmbach or the meeting with Mr. Kalmbach or the file opened for Syndicon." Skaggs Decl. ¶ 9. "The Trumark file was opened and an engagement letter was prepared on February 11, 2000." Skaggs Decl. ¶ 9. Based on Mr. Skaggs's review of the file, it appears that Bingham McCutchen provided advice to Trumark about a project on the Bowl property and that Bingham McCutchen billed Trumark for the services provided and was paid. *See* Skaggs Decl. ¶ 9. "[T]he last substantive communication with ... Trumark was on July 13, 2000," and, "[o]n June 26, 2001, my partner Barbara Schussman wrote to Trumark reciting that there had been no activity in the file for some time and advising that [Bingham McCutchen was] closing [its] file." Skaggs Decl. ¶ 9.

It does not appear that Mr. Skaggs or Bingham McCutchen did any work for either NP or Trumark after 2000, although NP asserts without supporting evidence that it "believed until receiving the expert report, that Mr. Skaggs was still available to North Pacifica as its attorney." Mot. at 3.

NP brought suit against the City in 2001 asserting the delay in approving the project violated various legal rights. This Court granted summary judgment on all but one claim—that the imposition of Condition 13(b) violated NP's equal protection rights. The "joint and several" language

of Condition 13(b) was not inserted by the City as a condition of approval of the project until well after 2000—more specifically, some time between July 1 and 15, 2002. *See* FF ¶¶ 10–15. NP did not assert an equal protection claim based on Condition 13(b) until the time that it filed in the instant case its motion for summary judgment in 2003. After bifurcation and a bench trial on liability, the Court found for NP on this claim. Trial on damages is now set for February, 2005. In this context, the expert reports of Mr. Skaggs and Mr. Curtin, attorneys at Bingham McCutchen, address (1) the diminution in value of the Bowl property and (2) the cost of cure. Both of these issues are relevant for the damages phase of the trial.

Neither Mr. Skaggs nor Mr. Curtin nor the McCutchen firm represented NP in this litigation. They played no role in this litigation until retained as experts by the City in connection with the damages trial.

## II. *DISCUSSION*

In its motion to disqualify, NP asked the Court (1) to disqualify Mr. Skaggs and Mr. Curtin from being experts in this case, (2) to disqualify the City's current counsel (the McDonough and Gagen firms)[2] from this case, and (3) to disqualify three other damages experts (Walter Carney, Jeff Robinson, and Jeffrey Wagner). The Court shall address each of these requests in turn.

### A. *Mr. Skaggs and Mr. Curtin of the Bingham McCutchen Firm*

 Prior to the hearing, Mr. Skaggs and Mr. Curtin of the Bingham McCutchen firm withdrew as experts for the City. However, at the hearing, the City conceded that the issue of Mr. Skaggs and

---

**2.** The McDonough firm represented the City throughout this case. The Gagen firm was associated in during preparation for the damages trial.

Mr. Curtin's disqualification was not entirely moot. Consequently, the Court ordered that Mr. Skaggs and Mr. Curtin be disqualified. The Bingham McCutchen firm performed a fair amount of substantive work on the very same development permit application at issue in this case (whether for NP's predecesssor in interest Syndicor or NP's agent Trumark). *Compare Commonwealth. Ins. Co. v. Stone Container Corp.*, 178 F.Supp.2d 938, 946–49 (N.D.Ill.2001) (concluding that attorney who previously worked for defendant should not be disqualified as expert for plaintiff, in part because attorney's prior representation of defendant involved activities "far afield" from matters involved in litigation at hand). In the case at bar, the prior work for Syndicor and Trumark raises such a substantial likelihood that these experts obtained confidential client information. Indeed, as indicated below, because Mr. Skaggs and Mr. Curtin served as counsel for these entities, it must be presumed they had access to confidential information. This warrants their disqualification as the City's experts herein.

### B. *McDonough Firm and Gagen Firm*

■ In its papers and at the hearing, NP argued that the McDonough and Gagen firms should be disqualified based on the rule of vicarious disqualification—that is, according to NP, having retained the Bingham McCutchen attorneys as experts, current litigation counsel should be disqualified as well. That rule of vicarious disqualification on which NP relies has traditionally been applied to disqualify the entire law firm to which the disqualified attorney belongs. *See People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1146, 86 Cal.Rptr.2d 816, 980 P.2d 371 (1999). That application is inapposite here. Mr. Skaggs and Mr. Curtin are attorneys at the Bingham McCutchen firm, not the Mc-

Donough firm or the Gagen firm, and they do not represent the City in this litigation.

NP seeks to extend the vicarious disqualification rule to the instant situation on the theory that the experts at issue were lawyers formerly retained by NP's predecessor and agent. However, NP cites no case in which vicarious disqualification has been extended from a disqualified legal expert to counsel who retained the expert. Indeed, there does not appear to be any case directly on point—where a side-switching expert formerly served as counsel for the opposing party. This is a matter of first impression.

The Court rejects NP's argument and finds that vicarious disqualification does not extend to this context. Rather, the most apt legal framework for analysis is that used by courts in determining whether counsel should be disqualified because its expert had switched sides.

■ Cases involving vicarious disqualification of the entire law firm are not on point where the disqualified party is an expert and not a member of the law firm. There is a substantial difference between the role played by experts and counsel. *See Commonwealth*, 178 F.Supp.2d at 944–45 (noting that, "[w]hen a lawyer is engaged as a testifying expert, that lawyer is not being asked to perform the traditional role of a lawyer in providing legal advice"). Attorneys have an ethical duty to represent and advocate for their clients and are bound by a duty of loyalty. *SpeeDee Oil Change Systems, Inc., supra*, 20 Cal.4th at 1146, 86 Cal.Rptr.2d 816, 980 P.2d 371. Experts play a more limited role in litigation; they are tasked with providing opinions on specific matters raised in the litigation. Moreover, the practical realities differ between a relationship an attorney has with an expert and that which an attorney has with other attorneys sharing a practice. An attorney's disqualification

extends to the entire firm, because when attorneys practice together, they presumptively share access to privileged and confidential matters. *Id.* at 1146, 86 Cal. Rptr.2d 816, 980 P.2d 371. The disqualification rule "recognizes the everyday reality that attorneys, working together and practicing law in a professional association, share each other's, and their client's, confidential information." *Id.* Vicarious disqualification is necessary to preserve both the confidentiality of client information, as well as public confidence in the legal profession and the judicial process by enforcing the attorney's duty of undivided loyalty. *City of Santa Barbara v. Superior Court,* 122 Cal.App.4th 17, 24, 18 Cal. Rptr.3d 403, 408 (2004). That same relationship does not obtain in the context of retained experts. Their role is limited. They do not share the same duty of loyalty to clients. There is no sustained relationship in a joint enterprise and common access to and sharing of information as is the case with attorneys sharing a law practice.

Importantly, the courts have addressed the context of when attorneys who retain a side-switching expert should be disqualified. Instead of applying a *per se* vicarious disqualification rule as applied to law firms of disqualified counsel, the courts have employed a fact-specific test where experts are involved. The central concern in cases in which counsel has retained a side-switching expert is whether counsel has unfairly obtained confidential information about the opposing party. *Cf. Flatt v. Superior Court,* 9 Cal.4th 275, 283, 36 Cal. Rptr.2d 537, 885 P.2d 950 (1994) (where attorney successively represents clients with potentially adverse interest, chief concern is confidentiality; test of disqualification is whether there is a "substantial relationship" between the subjects of those representation). That is the concern here.

■ Under the test applicable to disqualification of counsel employing side-switching experts, the Court must determine: (1) Did the expert have confidential information pertaining to plaintiff's trial preparation and strategy; (2) did he disclose it to defense counsel; and (3) if he did disclose it, does counsel's continued representation of defendant threaten to taint all further proceedings? *See Cordy v. Sherwin–Williams Co.,* 156 F.R.D. 575, 583 (D.N.J.1994); *cf. Shadow Traffic Network v. Superior Court,* 24 Cal.App.4th 1067, 1078, 29 Cal.Rptr.2d 693 (1994) (conducting a similar inquiry).

■ In applying this framework, the fact that the Bingham McCutchen firm was hired to represent Syndicor or Trumark as their counsel is relevant; it informs the first factor. Given the attorney-client relationship between Bingham McCutchen and Syndicor and between Bingham McCutchen and Trumark with respect to the same development permit application in the instant case, it must be assumed that Mr. Skaggs and/or Mr. Curtin did obtain confidential information from NP. *Cf. Trone v. Smith,* 621 F.2d 994, 999 (9th Cir.1980) (noting that, for the test for attorney disqualification, it does not matter whether confidences were actually disclosed in order for an attorney to be disqualified; a substantial relationship between two representations creates a presumption of access to confidential information, thus mandating disqualification); *Flatt, supra,* 9 Cal.4th at 283, 36 Cal. Rptr.2d 537, 885 P.2d 950 (accord).

■ However, application of the second and third factors in the instant case does not turn on the fact that Mr. Skaggs and Mr. Curtin previously served as counsel for NP's predecessor or agent. Rather, these factors turn on the experts' role and relationship with the City and its litigation counsel. Regarding the second factor, the

court in *Shadow Traffic* held that there was a presumption that the confidences were disclosed to defense counsel. However, the court also held that the presumption of confidence-sharing was rebuttable. *See Shadow Traffic,* 24 Cal.App.4th at 1085, 29 Cal.Rptr.2d 693 (stating that "a rebuttable presumption arises that the information has been used or disclosed in the current employment"). NP's argument that the presumption should be irrebuttable, simply because Mr. Skaggs and Mr. Curtin are attorneys, and thus triggers in effect automatic disqualification, is meritless. That fact informs the first, not the second factor, of the three-part test.[3]

 Here, the presumption of confidence-sharing has been rebutted. The declarations of Mr. Skaggs and Mr. Curtin, as well as the declarations of Michelle Kenyon and Patrick McMahon (of the McDonough and Gagen firms, respectively) unequivocally state that no confidential information was shared. These declarations are substantive, detailed, and complete. NP has done nothing to raise any substantial doubt about the credibility of these declarations. Second, the factual circumstances here indicate that the likelihood of disclosure of confidential information is extremely slim given the differences between the issues involved in Bingham McCutchen's prior representation and the issues involved in the instant case, as well as the fact that the prior representation ended in 2000, well before the matter now at issue (*i.e.,* Condition 13(b)) arose. The expert reports of Mr. Skaggs and Mr. Curtin reveal the narrow scope of their engagement as experts in the case at bar. Although the same development was the general subject of their (and McCutchen's) previous representation of Syndicor and Trumark and the current litigation, the Court is unable to discern any overlap in material fact between that earlier representation and the narrow issues on which they were asked to render an opinion in the case at bar.

 Because the presumption of confidence-sharing has been rebutted, the Court need not delve into the third factor. The Court notes, however, that that factor also weighs against disqualification of the City's current counsel. There would likely be no taint from continued representation by the McDonough and Gagen firms because, *inter alia,* the representation of Syndicor by Mr. Skaggs was limited; the representation of Trumark by Bingham McCutchen did not involve Mr. Skaggs or Mr. Curtin; the representation of both Syndicor and Trumark ended at the latest by 2000, well before Condition 13(b) was inserted in July 2002; and since liability has already been determined, the only issue at bar is the measure of damages recoverable. NP failed to articulate how any information Mr. Skaggs and Mr. Curtin may have obtained from NP's predecessor or agent, even if shared with the City's litigation counsel in the case at bar, would materially prejudice NP at the damages trial herein.

Finally, the Court notes that in applying the above analysis, although it is concerned with the integrity of the judicial process and interests of the parties concerned, it is mindful that motions to disqualify must be examined carefully and cautiously because of the heavy burden

---

**3.** Indeed, it could be argued that the fact that the two are attorneys works against NP. In *Cordy,* the court stated that there should be a presumption of confidence-sharing in part because "a non-lawyer would be more likely to reveal confidential information because he or she might not be as sensitive to the need to safeguard the information as would an attorney." *Cordy,* 156 F.R.D. at 584. Given that Mr. Skaggs and Mr. Curtin are lawyers, the opposite would be true.

disqualification imposes on both clients and the courts. *See SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at 1144, 86 Cal.Rptr.2d 816, 980 P.2d 371; *City of Santa Barbara, supra,* at 407.

### C. *Remaining Experts Walter Carney, Jeff Robinson, and Jeffrey Wagner*

In its opening brief, NP argued that Mr. Carney, Mr. Robinson, and Mr. Wagner should also be disqualified. However, NP offered little to support this argument, except to state that "all of [these experts] are testifying as to some aspect of the same issues addressed by Mr. Skaggs and Mr. Curtin, and were subject to being privy to Mr. Skaggs' confidential information, either through direct conversation, or indirectly by means of their instructions from the attorneys." Mot. at 12. This is nothing but a conclusory assertion by NP. NP's argument requires imputation upon imputation to be successful—*i.e.,* vicarious disqualification of the McDonough and Gagen firms because of their contact with Mr. Skaggs and then further vicarious disqualification of all other experts because of their contact with the McDonough and Gagen firms. For the reasons stated above, there is no factual basis for the disqualification of either counsel or thus these other experts.

### D. *Miscellany*

The Court provided the City with an opportunity to file an opposition to NP's motion to file certain parts of the Fromm reply declaration under seal and *in camera.* The Court did not receive an opposition from the City. Therefore, the Court shall grant NP's motion.

### III. *CONCLUSION*

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part NP's motion to disqualify. The Court also GRANTS NP's motion to file the Fromm reply declaration under seal and *in camera.*

IT IS SO ORDERED.