Filed 5/17/21  SLPR v. San Diego Unified Port Dist. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SLPR, LLC et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>SAN DIEGO UNIFIED PORT DISTRICT,<br><br>    Defendant and Respondent. | D077370<br><br><br>(Super. Ct. Nos. GIC860766-1; consolidated with Nos. 37-2008-00079175-CU-OR-CTL;37-2016-00025353-CU-EI-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Thorsnes Bartolotta McGuire, Vincent J. Bartolotta, Jr., Karen R. Frostrom; Beus Gilbert McGroder, Megan Beus, and Thomas A. Gilson, for Plaintiffs and Appellants.

Daley & Heft; Dean Gazzo Roistacher, Scott Noya, Lee H. Roistacher; Thomas A. Russell, General Counsel, Ellen F. Gross, Assistant General Counsel, John Carter, Deputy General Counsel; Liedle & Larson, and Matthew J. Liedle, for Defendant and Respondent.

# I

# INTRODUCTION

Plaintiffs SLPR, LLC, Ann Goodfellow, as Trustee of the Survivor's Trust Under the Goodfellow Family Trust, and Allan W. Arendsee and Lyndsey J. Arendsee, as Trustees of the Arendsee Family Trust (collectively, the Homeowners) appeal an order denying their motion to disqualify the law firm of Daley & Heft, LLP (Daley & Heft) from representing defendant San Diego Unified Port District (the Port) in this long-running civil litigation. The Homeowners filed their disqualification motion after learning that Daley & Heft employs a non-attorney staff member who used to be an employee of the law firm representing the Homeowners in this case.

We conclude the trial court did not abuse its discretion in denying the disqualification motion.  Therefore, we affirm the challenged order.

# II

# BACKGROUND

# A

## *The Litigation*

In 2006, the Homeowners filed suit against the Port and the State of California (the State) alleging that dredging activities in the San Diego Bay damaged the Homeowners' bayside properties in the City of Coronado.

In 2011, the trial court granted summary judgment in favor of the Port and the State.  On appeal, we determined there were triable issues of material fact precluding summary judgment, reversed the judgment entered on the summary judgment order, and remanded the matter for further proceedings.  (*SLPR, LLC v. State Lands Commission* (Nov. 29, 2012, D059913) [nonpub. opn.].)

On remand, the trial court bifurcated the case into two phases—phase I, which concerned quiet title-related claims, and phase II, which concerned all other pending claims. After a bench trial, the trial court entered judgment in favor of the Port and the State on the phase I claims. The Homeowners appealed the phase I judgment and we affirmed. (*SLPR, LLC v. San Diego Unified Port District* (2020) 49 Cal.App.5th 284.) There is no trial date currently scheduled for the claims that are part of phase II.

B

*Merel's Employment with the Corn Firm*

The Jon Corn Law Firm (the Corn Firm) has represented the Homeowners in this case since October 2016. The Corn Firm has one office located in Cardiff-by-the-Sea. During the relevant timeframe, the Corn Firm employed two attorneys and one non-attorney staff member named Kristine Merel.

The Corn Firm employed Merel from September 2013 to June 2018, including during the phase I trial. Merel worked as a front desk receptionist, legal secretary, paralegal, file clerk, and office manager. It is undisputed that Merel learned confidential information concerning the case during her employment with the Corn Firm.

In June 2018, just before the trial court rendered its phase I judgment, Merel's employment with the Corn Firm was terminated.

C

*Merel's Employment with Daley and Heft*

Daley & Heft has represented the Port in this case since 2009. Daley & Heft has three offices including an office in Solana Beach. During the relevant timeframe, Daley & Heft employed between 24 and 26 attorneys and 21 and 23 non-attorney staff members at the Solana Beach office. The Solana

3

Beach office is about 15,000 square feet in size and it is divided into two wings (a main wing and a west wing) separated by a reception area. Daley & Heft stores its files relating to this case in an office in the west wing. The storage office is marked with a sign that reads "*SLPR v. Port of SD*," and the door to the office is kept closed.

In December 2018, Merel responded to an advertisement for a legal assistant/secretarial position with Daley & Heft and was hired, effective January 2019. Merel stated on her resume that she had been employed by the Corn Firm's predecessor law firm. However, the hiring employee at Daley & Heft was unaware there was any relationship between the predecessor law firm listed on Merel's resume and the Homeowners' lawsuit against the Port.[1] Therefore, Daley & Heft did not establish an ethical screen around Merel when it hired her.

Merel has a desk in the main wing of Daley & Heft's Solana Beach office. Her duties are secretarial in nature and include typing letters and pleadings, formatting attorney-typed letters and pleadings, and filing and serving documents and pleadings. Merel provides secretarial support to three attorneys, one of whom is an associate named Matt Racine.

Merel has performed clerical tasks relating to the Homeowner litigation three times since she became employed by Daley & Heft. First, in April 2019, Racine was asked by a partner to prepare a motion to bifurcate the phase II trial.[2] Racine wrote the bifurcation motion and Merel thereafter formatted, filed, and served the motion. Second, in July 2019, Racine was asked to prepare a motion for leave to amend the Port's answer and a related

---

[1]    The predecessor law firm was called Axelson & Corn.

[2]    Prior to April 2019, Racine had never performed legal work for the Port in the Homeowners' litigation.

4

ex parte application concerning the briefing schedule for the motion for leave to amend. Racine wrote the documents and Merel formatted them for filing. Third, in early October 2019, Racine wrote the Port's reply brief in support of its bifurcation motion and Merel formatted, filed, and served the reply brief.

The Corn Firm learned Daley & Heft was employing Merel after she signed the proof of service for the Port's reply brief in support of the bifurcation motion and emailed courtesy copies of the filing to the Corn Firm. Daley & Heft was notified of the conflict arising from Merel's prior employment with the Corn Firm. Shortly after, Daley & Heft circulated a memorandum to all attorneys and non-attorney staff members screening Merel from the Homeowners' litigation and prohibiting discussions with her about the case.[3]

---

[3]   The Port has filed two motions requesting that we make factual findings and take additional evidence under Code of Civil Procedure section 909. In the first motion, which is unopposed, the Port asks us to find that Daley & Heft no longer employs Merel. In the second motion, the Port asks us to find that Daley & Heft is no longer the Port's counsel of record. The Homeowners oppose the second motion, asserting that the Port's new counsel of record is a law firm that consists entirely of former Daley & Heft attorneys who carried their alleged conflict with them into their new firm.

It is an "elementary rule of appellate procedure that, when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered." (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.) No party asserts the requested findings would render the appeal moot or fall within any other exception to the rule of appellate procedure just discussed. Further, we discern no exceptional circumstances justifying additional factual findings. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) Accordingly, we deny the Port's motions.

# D

## *The Disqualification Motion*

Approximately one month later, the Homeowners filed a motion to disqualify Daley & Heft based on its employment of Merel and its failure to establish an ethical screen around her when she began her new employment.

The Port opposed the disqualification motion.  It conceded Merel possessed materially relevant and confidential information from her prior employment with the Corn Firm.  However, it argued Merel had not used the information or disclosed it to anyone at Daley & Heft.  Together with its opposition brief, the Port filed 11 declarations including declarations from Merel, Racine, and several other Daley & Heft employees.

In Merel's declaration, which was prepared with the assistance of outside legal counsel, Merel averred she had not shared any substantive information regarding the Homeowners' litigation with anyone at Daley & Heft and no one at Daley & Heft had questioned her seeking information concerning the case.  She asserted that since she began her employment with Daley & Heft, the full extent of her involvement with the litigation was formatting line spacing, implementing spelling and grammar edits, and conducting filing and service for the three previously-discussed case filings.

Racine averred in his declaration that he never asked Merel to contribute, and Merel did not contribute, to the content of any of the previously-discussed case filings.  He stated he briefly discussed the case with Merel to facilitate the completion and filing of the documents, but he did not recall her saying anything about the case of which he was not previously aware.  Racine averred he had not communicated with Merel about the case since he learned of her prior employment with the Corn Firm.

After a hearing, the trial court denied the disqualification motion. It noted there was no dispute that Merel possessed confidential attorney-client information relating to the case, thus triggering a rebuttable presumption that the information was used or disclosed during Merel's employment with Daley & Heft. However, the court found the Port rebutted the presumption of use or disclosure.

In particular, the court found, by a preponderance of the evidence, that "Merel did not share any confidential information prior to October 2019 and … has been screened as of October 2019 …." In support of this finding, the court cited the declarations filed by the Port, which showed: (1) Merel "did not share any confidential information" with persons at Daley & Heft and "they did not seek any confidential information" from her, (2) Merel's "involvement in the case was limited" at both the Corn Firm and Daley & Heft, (3) Merel "merely performed formatting work" on briefs and "served some of the pleadings" at Daley & Heft, and (4) Daley & Heft "maintained, and does maintain, files for this case separate from other cases in its own room where the door is labeled and is always closed." The court also noted there was no indication that Merel is talkative or dishonest, or that she "volunteered confidential information or that she lied …."

After finding that Merel did not use or share confidential information, the court determined "the Port's right to counsel of its choice, [which] has expended a significant number of years becoming familiar with the issues [in the case], outweighs the concerns of preserving the public trust in the administration of justice and the integrity of the bar in this case." According to the court, "[t]he public and bar should not be concerned that Port's counsel has or will taint fair administration of justice in this case by virtue of the fact Port's counsel hired Ms. Merel."

7

The Homeowners appeal the order denying their disqualification motion.

## III

## DISCUSSION[4]

### A

### *Standard of Review*

" 'Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion.' " (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 848.) "We do not substitute our judgment about disputed factual issues, where supported by substantial evidence. However, where the material facts are not in dispute, we independently review the disqualification ruling as a question of law, and will reverse where [the ruling is] taken without a reasonable basis." (*Banning*

---

[4] The Port urges us to affirm the order denying the disqualification motion on grounds that the Homeowners furnished the court with an incomplete appellant's appendix, which failed to include numerous crucial documents such as the disqualification motion, the notice of appeal, and many of the declarations the Port filed with its brief in opposition to the disqualification motion. In response, the Homeowners filed a motion for leave to file a "supplemental appendix" consisting of these and other critical documents. We construe the Homeowners' motion as a motion to augment the record, grant the motion and, on that basis, we decline to resolve this appeal based on the incomplete appellate record.

However, in granting the Homeowners' motion, we by no means condone their inexcusable failure to provide us a complete appellate record. Further, although the issue was not raised by the Port, we note that numerous statements of fact in the Homeowners' appellate briefs are unsupported by references to the appellate record. We admonish the Homeowners and their counsel that unsupported portions of briefs may be stricken or disregarded (Cal. Rules of Court, rule 8.204(e); *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856), and augmentation motions may be denied where, as here, relief is requested to fix a deficient appellate record. (Cal. Rules of Court, rule 8.155(a)(1); *Russi v. Bank of America Nat. Trust & Savings Ass'n* (1945) 69 Cal.App.2d 100, 102.)

*Ranch Conservancy v. Superior Court* (2011) 193 Cal.App.4th 903, 910–911; see *Antelope Valley Groundwater Cases* (2018) 30 Cal.App.5th 602, 615 ["The abuse of discretion standard requires that we affirm the ruling unless 'there is no reasonable basis for the trial court's decision.' "].)

B

*Legal Standards Governing Disqualification*

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' [Citations.] Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. [Citation.] The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee*).)

An attorney or law firm's hiring of a non-attorney employee previously employed by "opposing counsel is not, in and of itself, sufficient to warrant disqualification of [the] attorney or law firm. However, when the former employee possesses confidential attorney-client information, materially related to pending litigation, the situation implicates ' "... considerations of ethics which run to the very integrity of our judicial process." [Citation.]' [Citations.] Under such circumstances, the hiring attorney [or firm] must obtain the informed written consent of the former employer, thereby dispelling any basis for disqualification." (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 592–593, fns. omitted (*Asbestos*).)

9

If written consent is not obtained, disqualification of the hiring firm may be warranted. "The party seeking disqualification must show that its … former employee possesses confidential attorney-client information materially related to the proceedings before the court." (*Asbestos, supra*, 232 Cal.App.3d at p. 596.) "Once this showing has been made, a rebuttable presumption arises that the information has been used or disclosed in the current employment. The presumption is a rule by necessity because the party seeking disqualification will be at a loss to prove what is known by the adversary's attorneys and legal staff. [Citation.] To rebut the presumption, the challenged [firm] has the burden of showing that the practical effect of formal screening has been achieved. The showing must satisfy the trial court that the employee has not had and will not have any involvement with the litigation, or any communication with attorneys or coemployees concerning the litigation, that would support a reasonable inference that the information has been used or disclosed. If the challenged [firm] fails to make this showing, then the court may disqualify the attorney and law firm." (*Ibid.*)

"A presumption is an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (a).) "A presumption is either conclusive or rebuttable. Every rebuttable presumption is either (a) a presumption affecting the burden of producing evidence or (b) a presumption affecting the burden of proof." (*Id.*, § 601.) As noted, the presumption that arises in a disqualification proceeding involving a non-attorney employee is rebuttable. (*Asbestos, supra*, 232 Cal.App.3d at p. 596.) Because it is intended to implement the public policy of protecting confidential attorney-client information, it is a presumption affecting the burden of proof. (*Shadow Traffic Network v. Superior Court* (1994) 24 Cal.App.4th 1067, 1085 (*Shadow*

10

*Traffic*); see *In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 538 ["A presumption affecting the burden of proof is a rebuttable presumption 'established to implement some public policy other than to facilitate the determination of the particular action in which the presumption is applied.' "], quoting Evid. Code, § 605.) "The effect of this type of presumption 'is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact.' " (*Shadow Traffic*, at p. 1085, quoting Evid. Code, § 606.)

## C

### *The Trial Court Did Not Abuse its Discretion in Denying the Disqualification Motion*

In the proceedings below, it was undisputed that Merel possesses confidential information regarding this case due to her prior employment with the Corn Firm. Thus, the basic fact giving rise to the presumption (Merel's possession of confidential information) was established and the trial court was required to find the presumed fact (Merel's use or disclosure of confidential information), unless it was persuaded, by a preponderance of the evidence, of the nonexistence of the presumed fact. The court found the Port *did* establish the nonexistence of the presumed fact—i.e., it found "Merel did not share any confidential information" with others at Daley & Heft—and therefore denied the disqualification motion.

On appeal, the Homeowners claim that a party opposing disqualification can rebut the presumption of use or disclosure only if it presents evidence that it implemented a formal screening or its equivalent at the outset of the tainted employee's new employment. Because the Port did not present such evidence, the Homeowners assert the trial court erred in determining that the Port rebutted the presumption of use or disclosure.

11

As explained in *Asbestos*, an employer should, as a matter of routine, determine during the hiring process whether a new employee should be screened from involvement with litigation. (*Asbestos, supra*, 232 Cal.App.3d at pp. 593–594.) When a screening is warranted, it should be timely implemented "before undertaking the challenged representation or hiring the tainted individual." (*Id.* at p. 594.) The implementation of a timely screening reduces the likelihood that confidences will be disclosed on a prospective basis. (*Ibid.*) Because a timely screening protects against the disclosure of confidential information, an employer may also rely on evidence of a timely screening, such as a screening memorandum, to rebut the presumption of use or disclosure that may arise in a later disqualification proceeding. (*Ibid.*)

However, contrary to the Homeowners' argument, evidence of a screening is not a prerequisite to rebut the presumption of use or disclosure. The *Asbestos* decision itself makes this clear. " 'Screening is a prophylactic, affirmative measure to avoid both the reality and appearance of impropriety. It is *a* means, but not *the* means, of rebutting the presumption of shared confidences.' " (*Asbestos, supra*, 232 Cal.App.3d at p. 594, quoting 1 Mallen & Smith, Legal Malpractice (3d ed. 1989) § 13.19, p. 794; *id.* at p. 593 ["*The most likely means of rebutting the presumption* is to implement a procedure, before the employee is hired, which effectively screens the employee from any involvement with the litigation ….' "], italics added; *Western Digital Corp. v. Superior Court* (1998) 60 Cal.App.4th 1471, 1488 (*Western Digital*) ["*In re Complex Asbestos Litigation* does not require formal screening."]; accord *Shadow Traffic, supra*, 24 Cal.App.4th at pp. 1086–1087 [opining the trial court reasonably could have found the presumption of shared confidences rebutted, even though there was no evidence of an ex ante screening].)

Here, the Port did not produce evidence that a formal screening was instituted at the outset of Merel's employment. But it did present other competent evidence that there was no improper use or disclosure of confidential information, as *Asbestos* permits. As noted, the Port presented evidence in the form of declarations from Merel and other Daley & Heft employees stating that Merel did not disclose confidential information to the employees, the employees did not ask Merel to disclose such information, Merel had minimal involvement in the case limited to formatting, filing, and serving previously-prepared documents, and the case files were kept in a clearly-marked office with a closed door in a different wing than the wing in which Merel's desk is located. Additionally, it presented evidence that Daley & Heft circulated a memorandum screening Merel from involvement on the case in October 2019 after it learned of her employment with the Corn Firm.

A court has broad discretion to find the presumption of shared confidences rebutted if it is convinced "the *practical* effect of formal screening" was achieved. (*Asbestos, supra*, 232 Cal.App.3d at p. 596, italics added.) In view of the declarants' statements that confidential information was not shared, the evidence that Merel's involvement in the case was both minimal and clerical in nature, and the lack of evidence casting doubt on Merel's veracity, we conclude the trial court did not exceed the bounds of reason in finding the practical effect of a screening was achieved because there was no use or disclosure of information. (See *Western Digital, supra*, 60 Cal.App.4th at pp. 1484–1488 [presumption of shared confidences rebutted by declarations averring, among other things, that confidential information was not discussed]; *North Pacifica, LLC v. City of Pacifica* (N.D. Cal. 2004) 335 F.Supp.2d 1045, 1052 [presumption of shared confidences rebutted by declarations averring no confidential information was shared]; accord

13

*Asbestos*, at p. 583, fn. 5 ["a motion to disqualify normally should be decided on the basis of the declarations and documents submitted by the parties"].)

Even if we were to accept that the court abused its discretion in misapplying the presumption standards discussed in *Asbestos*, the Homeowners have not demonstrated how the alleged error produced a miscarriage of justice. The rebuttable presumption is a framework through which a specific factual issue is to be resolved in the trial court—that is, the issue of whether a non-lawyer employee used or disclosed confidential information. (Evid. Code, § 600, subd. (a); see *People v. McCall* (2004) 32 Cal.4th 175, 182 [" '[P]resumptions are a staple of our adversary system of *factfinding*.' "], italics added.) But the Homeowners do not dispute any of the trial court's factual findings. On the contrary, they unequivocally disavow any notion that they are challenging the court's factual findings.

Thus, it is uncontroverted for purposes of this appeal that: (1) Merel "did not share any confidential information prior to October 2019," (2) Merel "has been screened as of October 2019," and (3) "others did not seek [confidential information] from her." Because the factual findings themselves are uncontested, any purported error in the *method* by which the trial court reached these factual findings is harmless. (See *S.Y. v. Superior Court* (2018) 29 Cal.App.5th 324, 340 [court abused its discretion in relying on improper fact to find presumption was rebutted, but error was harmless]; *Orange County Water Dist. v. MAG Aerospace Industries, Inc.* (2017) 12 Cal.App.5th 229, 244 [court's alleged misapplication of causation standards was harmless due to unchallenged factual findings pertaining to causation].)

We are left with addressing one final question: did the trial court abuse its discretion in denying the disqualification motion, even though it is

undisputed that Merel has not used or disclosed materially relevant confidential information? We conclude the court did not abuse its discretion.

"[D]isqualification is a 'drastic remedy' that should only be ordered where attorney misconduct has a ' "substantial continuing effect on future judicial proceedings." ' " (*Big Lots Stores, Inc. v. Superior Court* (2020) 57 Cal.App.5th 773, 782.) "We do not disqualify a lawyer from representing a client to punish the lawyer's mistakes or even bad behavior. ... Rather, disqualification of counsel is a prophylactic remedy designed to mitigate the unfair advantage a party might otherwise obtain if the lawyer were allowed to continue representing the client." (*City of San Diego v. Superior Court* (2018) 30 Cal.App.5th 457, 470–471.) "[J]udges must examine [disqualification] motions carefully to ensure that literalism does not deny the parties substantial justice." (*SpeeDee, supra*, 20 Cal.4th at p. 1144.)

Because Merel has not used or disclosed confidential information obtained from her prior employment, and there is no indication she will do so in the future, we discern no threat to the public trust if the disqualification motion is denied. For the same reasons, we do not believe disqualification is necessary to prevent the Port from obtaining an unfair benefit. While Daley & Heft could have—and certainly should have—screened Merel from the case when she began her employment, it appears disqualification at this juncture would accomplish little more than to punish Daley & Heft for its delay in screening her. This is not a sufficient basis upon which to order disqualification of counsel. Further, disqualification would impose substantial hardship on the Port by requiring it to replace its chosen legal counsel, which has represented the Port for the past 12 years in this drawn-out 15-year litigation. Considering all these factors, we conclude the trial

court did not abuse its discretion in denying the Homeowners' disqualification motion.

## IV

## DISPOSITION

The order denying the disqualification motion is affirmed.  The San Diego Unified Port District is entitled to its costs on appeal.


McCONNELL, P. J.

WE CONCUR:


BENKE, J.


O'ROURKE, J.